CULLEN, J.
—This action was brought by the plaintiff, a stockholder of the defendant, the Brooklyn City Railroad Company, to set aside a lease of its railroad executed by that *956 company to the defendant, the Brooklyn Heights Railroad Compan)r. At the opening of the trial of the action the plaintiff admitted that the lease sought to be avoided bad been approved by the votes of the holders of more than two-thirds of the stock of the Brooklyn City Railroad Company, and that he (the plaintiff) was the only complaining stockholder. Hpon these admissions the defendant moved to dismiss the complaint, on the ground that the complaint, as modified by the admissions, failed to state a good cause of action. The motion was granted, and from the judgment entered upon such decision of the trial court this appeal is taken.
The two grounds upon which the learned trial court based its determination were—First, that the complaint was defective in failing to allege that the action was brought, not only in the right of the plaintiff, but also on behalf of all other stockholders of the corporation; and, second, that the complaint failed to set forth any sufficient demand upon the eor¡Doration to bring an action to set aside the lease. As to the first objection to the complaint,' we are by no means clear that it was well taken. The complaint showed that the action was brought, not for a wrong personal to the plaintiff, but for a wrong against the defendant corporation, of which he was a shareholder, and his right of action was not primary, but derivative from the corporation, and existing only by the failure of the corporation to assert its own right. In such a case the action doubtless should be and is on behalf, not only of the particular plaintiff, but all the stockholders of the same corporation. But we are not prepared to say that a failure to make such an allegation can in any manner modify the character or limit the effect of the action. Sage v. Culver, 147 N. Y. 241, 69 S. R. 524, was similar in its character to the action now before us. The defendant interposed a demurrer to the complaint on the ground of its failure to state a cause of action. The precise objection presented. here was raised and argued in that case. The complaint did not allege that the action was brought on behalf of all the stockholders of the corporation. The demurrer was overruled, and in the opinion delivered in that case it is said:
“ They [the plaintiffs] bring this action as such stockholders against the defendants as directors, and ask the court to adjudge that the defendants account to them or to the corporation concerning certain transactions in regard to the management of the affairs of the corporation which are stated in the complaint. It is the sufficiency of these allegations as the basis of an action that is challenged by the demurrer. The complaint contains proper allegations to warrant the plaintiffs, as stockholders, in bringing the action, instead of the corporation itself, and there is no difficulty on that, ground, if the allegations are otherwise sufficient.”
It is claimed that the Sage Case is distinguishable from the one before us in that it prayed for relief only in favor of the *957 plaintiffs, and not for the corporation, but we think this contention is not sustained by the facts. The complaint asked for an accounting from the defendants. The accounting could only be from the defendants to the corporation, not to the plaintiffs in that action alone, and that it was the corporation that was entitled to the account plainly appears from the opinion above quoted. It is not necessary to dilate on the question, as in our opinion, even if the objection were good, it did not justify the dismissal of the complaint. As the objection did not go to the existence of any requisite fact, but solely to the form of a pleading, the plaintiff should have been allowed to amend his complaint.
The second ground on which the decision of the trial court proceeded we think clearly correct. It is settled law that in this class of cases, as the primary right of action is in the corporation, the stockholders can intervene only upon the refusal of the corporation to seek to enforce its own rights. “ An action for injuries caused by such misconduct must be brought in the name of the corporation, unless such corporation or its officers upon being applied to for such a purpose by a stockholder, refuse to bring such action. In that contingency, and. then only, can a stockholder bring an action for the benefit of himself and others similarly situated, and in such an action the corporation must necessarily be made a party defendant. When a stockholder brings such an action, the complaint should allege that' the corporation, on being applied to, refuses to prosecute; and as this averment constitutes an essential element of the cause of action the complaint is defective and insufficient without it.” Greaves v. Gouge, 59 N. Y. 154; Hawes v. Oakland, 104 U. S. 460; Leslie v. Lorillard, 31 Hun, 305. The averments of the complaint before us, in these respects, are insufficient. The allegations of the twenty-ninth paragraph of the complaint are that the plaintiff demanded of his corporation, as a stockholder of the road, his share of the proceeds of the operation of the railroad over and above the rent stipulated to be paid in the lease. This demand called for no action by the lessor company against the lessee company. A payment of some sum of money to the plaintiff would have been a complete compliance with the demand. Further, the plaintiff had no right to the payment of any part of the earnings of the railroad, except as the corporation should declare dividends. Assuming the lease complained of to have been illegal, or even wholly void, the. whole earnings of the railroad in such case would belong to the lessor, not to the plaintiff, nor was he entitled to any aliquot share of them. The thirtieth paragraph states that the plaintiff has notified the directors and officers of his company that the lease was unlawful and to the injury of the stockholders of the companjr, and has demanded that there shall be distributed among the stockholders all the profits and receipts from the operation of the railroad, without regard to the lease; *958 that such distribution necessarily involved such action on the part of said officers and directors as would effect the annulling of said lease, but that said directors and officers have failed and neglected to take any proceedings towards the annulling of said lease or agreement. There is the same criticism to be made on the statements of this paragraph as upon those of the preceding paragraph. There is alleged no demand that the corporation institute any action to annul the lease. As the right of the plaintiff to bring the action, is based on the refusal of the corporation to act, this defect is fatal.
Both at the trial and oh this appeal the defendants further contend that the complaint states no case sufficient to set aside the lease. The scheme of the lease of the road of the Brooklyn City Company, as detailed in the complaint and the circular from the board of directors to the stockholders, annexed to the complaint and made part thereof, is substantially as follows: A syndicate proposed to the directors and stockholders of the railroad company that the railroad should be leased to another company for a net sum above all taxes,, expenses, etc., equal to 10 per cent, of the stock of the company, which at the time was $9,000,000. A traction company was to be formed with a nominal capital of $30,000,000, which was to own and control the company which might lease the railroad. The syndicate was to secure and deposit the sum of $4,000,000 as a fund to guaranty the payment of the rent stipulated. Each shareholder of the railroad company, for every $100 par value of stock, was entitled to subscribe for and receive three shares of traction-company stock upon the payment of $15 per share, or to sell his right, to such subscription. This would dispose of $27,000,000 of traction-company stock. The remaining $3,000,000 of that stock was to go to the syndicate, which was to pay for the stock at the same rate as that exacted from the stockholders of the Brooklyn City Railroad Company,—$15 per share. It is stated in the complaint that at the time this scheme was formulated the Brooklyn City Railroad. Company possessed very valuable franchise and property; that it had been operating a horse railroad; that it had paid continuously dividends at the rate of 8 per cent, per annum; that it had at this time obtained the franchise or privilege of substituting electricity as the motive power in the operation of its railroads ; that tire change of motive power would render the operation of the railroad far more profitable than it had previously been, by both diminishing the expense of operation and increasing its patronge; and that the company was in a condition to increase its earnings and pay dividends to the stockholders in excess of 10 per cent., and at least 15 per cent. It is further stated that the defendant, the Brooklyn Heights Railroad Company, possessed a short railroad, of little value; that its capital stock of $200,000 was not worth more than 50 per cent, of its par value; that the company was. without means to pay the rental of 10 per cent, to the Brook *959 lyn City Railroad Company, except as it derived such means from the earnings of the latter company. It is then stated that to carry out this scheme the railroad of the Brooklyn City-Company was leased to the Brooklyn Heights Company; that the plan of distributing the $30,000,000 of stock of the traction company, and leasing the road to the Brooklyn Heights Company, was to deprive the stockholders of the Brooklyn City Company of the earnings of that road, and is illegal and fraudulent.
We see no ground on which it can be successfully maintained that the lease was illegal. The power of railroad companies to demise their own roads, or lease those of others, has existed in this state from the earliest period of railroads within it.. For a long time this power was held to depend on the statute, of 1839, which authorized railroads to contract with each other for the use of their roads. Woodruff v. Railway Co., 93 N. Y. 616. And this power could be exercised by the board of direction without the assent of the stockholders. Beveridge v. Railroad Co., 112 N. Y.; 20 S. R. 962. Flow, by chapter 676 of the Laws of 1892 (section 78), express authority to lease railroads is given, but it is provided that leases exceeding in term one year shall not be valid or binding unless approved by the holders of two-thirds of the stock of the corporations. The concession of the plaintiff, made on the trial, is that the lease was ratified by more than two-tliirds in amount of the stockholders. The lessee is a railroad company, and therefore legally competent to accept the lease. The fact that the scheme contemplates a traction company which should own the stock of the Brooklyn Heights Railroad Company brings into the case no element of illegality. There is no limitation on the right of any person, individual or corporation, domestic or foreign, to own or hold the stock of railroad corporations of this state. There is doubtless an element of stock-jobbing- or stock-watering- in the scheme,—the issue of $30,000,000 of traction stock at 15 cents on the dollar,'—but this is not condemned by the laws of this state as to railroad companies. Van Cott v. Van Brunt, 82 N. Y. 535. It is forbidden as to certain corporations, but there is no such general legislation on the subject that we can say it is condemned by public policy of the state, whatever may be our own notions as to its wisdom and propriety. FTor is the scheme, as detailed, fraudulent per se. The stockholders of the Brooklyn City Railroad Company were to receive dividends at the rate of 10 per cent, per annum. It doubtless was the expectation of the syndicate that the profits from the operation of the railroad would exceed the stipulated rent, otherwise there would be no profit in the undertaking, but that does not condemn the scheme as fraudulent. In most bargains there is a' contemplation of profit by one side or the other. If the sole reliance for the payment of the rent was to be the earnings of the Brooklyn City‘Railroad Company, it might well be said that it was a most foolish bar *960 gain, because in that case the railroad company would have much to lose and nothing to gain by the transaction. But this was not the plan. Four million dollars was to be deposited in a trust company on the delivery of the lease, as the security for its performance. There is no complaint that this sum was not so deposited. It certainly cannot be said that, where the stock had been paying only 8 per cent, dividends for years, a lease at the rate of 10 per cent, guarantied by the deposit of $4,000,000, or an amount equal to nearly one-half the capital stock of the railroad company, was necessarily a foolish, much less a fraudulent, bargain. Besides this guaranty of dividends, the stockholders of the Brooklyn City Railroad Company had the right to subscribe to the stock of the traction company. If he thought that the future operation of the railroad was to be profitable, he could, of course, acquire the stock of the new company by paying his proper subscription ; but he was not compelled to venture any further sum unless he saw fit, because under the plan each stockholder was entitled to dispose of his right to subscribe. Nor does the fact that the whole of the stock of the traction company was not apportioned among the stockholders of the Brooklyn City Railroad Company necessarily show unfairness. The right to subscribe to $3,000,000, or one-tenth of the whole capital, was to go to the syndicate; but this provision for the syndicate was not a gift, or without consideration. The syndicate had already advanced $500,000 as security for carrying out the plan of lease in case the stockholders should adopt it. It was, further, to secure the deposit of $4,000,000 on the execution of the lease. Of course, if all the stockholders of the Brooklyn City Railroad Company should exercise their election of subscribing to the traction stock, such subscriptions, in addition to the subscription of the syndicate, would amount to $4,500,000,—a sum exceeding the amount of the required deposit; but, in case the stockholders of the City Railroad Company did not subscribe, the syndicate would have to advance the money itself. It would be absurd to imagine that any people would enter upon this scheme, and advance moneys for its accomplishment, unless there was to accrue some profit, or hope of profit, to themselves. The right not to receive as a bonus, but to subscribe for, a tenth part of the traction company’s stock, cannot be said, on its face, to be excessive or unfair compensation to the syndicate for the part it was to assume in this plan, nor is there any allegation to that effect to be found in the complaint.
It may be said by the plaintiff that it is his desire that the Brooklyn City Railroad Company shall carry on its business as formerly, manage its own road, receiving all the profit therefrom, and, of course, running the risk of its own losses. It may be, as he asserts, that the-profit so accruing to the stockholders of the Brooklyn City Railroad Company will be far in excess of 10 per cent., and that it would be wiser had the company never leased its road. But the plaintiff is one of *961 Arsry many stockholders in the company,—one of many interested in a common enterprise. . In the management of that enterprise, so far as its conduct is authorized by law, not his will or judgment, but the will and judgment of the majority, must control, even though he should be right and the majority wrong in their judgment. “ Generally, the rule must be that in such cases the will of the majority shall govern. The court would not be justified in interfering, even in doubtful cases, where the action of the majority might be susceptible of different constructions. To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where- such action is within the corporate powers,, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company, and in a manner inconsistent with its interests.” Gamble v. Water Co., 123 N. Y. 91; 33 S. R. 88. As already stated, the action of the Brooklyn City Bailroad Company in leasing its road was within its corporate powers, and it cannot be said that the action of the stockholders in leasing their road at 10 per cent, per annum, with the guaranty and privileges above recited, Avas “ so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests.”
But though the lease was within the power of the defendant corporations, and upon its face the plan for lease is neither fraudulent nor oppressive, still fraud might be proved as a matter of fact, if the allegations of the complaint are sufficient for that purpose. As the facts were not entered upon at the trial, but the complaint dismissed on the openipg, it is necessary to see whether the pleadings sufficiently charge fraud. It is charged that the Brooklyn City Bailroad Company would be able to pay 15 per cent. dividends if it retained its road, instead of 10 per cent., and that the effect of the lease is to deprive the company of its full earnings. As already said, this does not necessarily render the lease illegal or fraudulent. Generally a lease, if made at a low price, deprives the lessor of its earnings ; if at a high price, the lessee of its earnings. In the fifteenth paragraph it is alleged that certain persons, some of whom were directors of the company, designed and entered into a scheme to divest a portion of the earnings from" the stockholders, and in pursuance of that scheme to lease the railroad for a consideration less than its rental value. Except so far as the persons were directors of the railroad company, there was no wrong in their attempting to lease the railroad cheaply. But as to the directors of the company such conduct *962 would be fraudulent,'because their loyalty was due to the company and its stockholders, and, of course, it would be equally wrong in other parties to combine with the directors. To this it may be urged that the allegation would be true possibly if one, and certainly if two, of the directors only were parties to such a scheme, while a clear majority of all the directors may have acted from a desire to benefit the stockholders. The allegation is justly subject to this criticism. But in the twenty-third paragraph of the complaint it is charged that the scheme of leasing the road was unlawful, the effect and intent thereof on the part of the shareholders who designed, approved, and carried the same into effect being to injure and defraud the stockholders of the company. We are inclined to the opinion that this is a charge as to the motive and object of all the stockholders voting for the approval of the lease. We can appreciate the improbability of all the shareholders acting in bad faith, against their own interests as shareholders, for some undisclosed advantage in another direction; but we cannot say, as a matter of law, that.the allegation is incapable of proof to sustain it.
Except as to this view of the sufficiency of the allegation of fraud, we all are in accord. But as to this two of my associates, the presiding justice and Mr. Justice Hatch, differ from me. They are of opinion that the allegation is defective in failing to charge what the fraudulent conduct and motives of the stockholders were, and also think that the allegation of fraud is to be construed in connection with the other statements of the complaint as to the scheme of leasing the railroad, and so construed to charge nothing more than an intent to carry out that scheme. They are therefore of opinion that no case is stated justifying an avoidance of the lease.
The judgment appealed from should be affirmed, with costs.
All concur.