for the prisoner that the latter must be discharged; but the provisions of section 2035 of the Code of Civil Procedure, as I construe them, do not sanction such a course. That section, so far as applicable, provides:

"If it appears that the prisoner has been legally committed for a criminal offense, or if he appears by the testimony offered with the return, or upon the hearing thereof, to be guilty of such an offense, although the commitment is irregular, the court or judge, before which or whom he is brought, must forthwith make a final order to discharge him upon his giving bail, if the case is bailable, or, if it is not bailable, to remand him."

The case of People ex rel. Allen v. Hagan, supra, relied on by the prisoner's counsel in support of the proposition that where the commitment is defective the detention of the person held thereunder cannot be justified, is clearly distinguishable from the present one. There the return merely stated that the relators were detained in custody under a warrant of commitment, which was set forth in hæc verba, and which constituted the whole return. The relators demurred in open court to the return, and the case was decided solely upon the sufficiency of the commitment. Here, however, the situation is entirely different; the return embracing not only the commitment, but the proceedings had before the coroner and a jury as well, from which it appears that the prisoner was legally committed for a criminal offense, the commission of which by him may be fairly inferred from the evidence. The prisoner did not demur to the return, but traversed it by denying that the coroner had jurisdiction to sign the commitment, averring that no formal complaint or information had been formulated against him, and by further denying that the evidence taken at the coroner's inquest established that a crime had been committed or that there was reasonable cause to suspect that the prisoner was guilty of such crime.

The prisoner is therefore entitled, pursuant to the above-cited provisions of section 2035 of the Code of Civil Procedure, to a final order discharging him from imprisonment upon giving bail in the sum of $5,000, which said sum I believe to be sufficient to secure his appearance to answer the charge above mentioned.

---

(115 App. Div. 7)

COATSWORTH v. LEHIGH VALLEY RY. CO. et al.

(Supreme Court, Appellate Division, Third Department. September 19, 1906.)

1. ESTOPPEL—ACQUIESCENCE—INFANTS.

　　Where defendant railroad company did not get its title from plaintiff's ancestor or grantors, and there was no evidence that the road was built without objection on the part of those who then owned the land in question, and plaintiff was an infant at the time the bridge in controversy was erected to cross a street, plaintiff was not estopped from questioning defendant's right to cross such street.

2. IMPROVEMENTS—OWNERSHIP—BRIDGE IN STREET.

　　That a railroad wrongfully placed its bridge over a street with iron supports resting on the street, the fee of which was in plaintiff, did not give plaintiff title to the bridge so that he was entitled to charge rent for the use thereof by the railroad company.

**3. EMINENT DOMAIN—OCCUPATION OF STREET—DAMAGES.**

Where a railroad company, under municipal authority, erected a bridge over a street of which plaintiff owned the fee, and constructed pillars in the street as an additional support to the bridge, plaintiff's injury was only to the extent that his right of way had been impaired by the obstructions placed in the street, which should have been proved by evidence of the difference in value of his adjoining land with his street obstructed and unobstructed.

**4. SAME—SUBSTANTIAL DAMAGES.**

Where a railroad company, under municipal authority, constructed a bridge over a street, the fee of which was in plaintiff, plaintiff was not entitled to relief unless he suffered substantial damages by the obstruction of his right of way appurtenant to adjoining land.

Appeal from Special Term, Erie County.

Action by Reuben H. Coatsworth against the Lehigh Valley Railway Company and another. From a judgment in favor of defendants, and from an order granting an extra allowance of costs, plaintiff appeals. Reversed, and new trial granted.

The plaintiff is the owner of a parcel of ground in the city of Buffalo bounded upon the north by Otto street, upon the east by Alabama street, upon the south by Perry street and upon the west by Hayward street. Immediately north of this parcel of land and north of Otto street is a parcel of land owned by the defendant the Lehigh Valley Railway Company. Upon this land are the tracks of the Lehigh Valley Railway Company and said tracks run easterly over Alabama street by means of a bridge which passes over the street so as to give about 12 feet of headway. This bridge the court is here asked to remove by its mandatory injunction. Said bridge is upon abutments which are upon the land of the said Lehigh Valley Railway Company upon either side of said street, but in the street are iron pillars reaching down to the ground which operate as an additional support for the bridge. The land upon the west side of Alabama street and to the center of Alabama street was formerly owned by the plaintiff's ancestor. When the land was deeded it was bounded by the north line of Otto street and the west line of Alabama street so that the title to the fee of the street remained in the ancestor and passed to his heirs whose interests have been subsequently purchased by this plaintiff. The situation upon the east of Alabama street upon which the tracks of the defendant company are located is practically similar except that the fee of the land from the east line of Alabama street to the center of the street was formerly owned by the brother of plaintiff's ancestor and passed to his heirs and was subsequently deeded to the plaintiff. Plaintiff, therefore, owns the fee of Alabama street from side to side over which the defendant has constructed its bridge. Alabama street is a public street in the city of Buffalo and the structures of the defendant are placed upon and over that street by permission of the municipal authorities. Upon the trial the court found that the maintenance of the structure of the bridge upon and over Alabama street causes not more than nominal damages to the plaintiff, and the complaint was dismissed, with costs, and an order entered allowing the defendant an extra allowance of $500. From this judgment and this order the plaintiff here appeals.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

John Cunneen, for appellant.

Bissell, Carey & Cooke (James McCormick Mitchell, of counsel), for respondents.

SMITH, J. Defendant's insistence that plaintiff is estopped from questioning the defendant's right to cross this highway by reason of

the silence and acquiescence of his grantors is not sustained by any proof. The railroad company did not get its title from the plaintiff's ancestor or grantors nor is there a word of evidence that the road was built without objection upon the part of those who then owned the land in question. It is conceded that no action was brought until about 1894 while the bridge was built in 1884, but the plaintiff was in 1884 an infant. An estoppel is an affirmative defense, and he who would rest upon it must prove the facts upon which it can stand.

We do not agree with appellant's contention that the wrongful act of the defendant in placing this bridge over the land with the iron supports resting thereupon gave title thereto so that plaintiff may charge for the use thereof by the defendant company as for rental. The rule of law as stated in De Camp v. Bullard, 159 N. Y., 450, 54 N. E. 26, is not applicable in this case. The occupation of this land as to plaintiff has been called by Judge Gray in the Court of Appeals that of a quasi trespass. The defendant is there, however, by permission of the municipality, which municipality, it would seem, would have the legal right to any compensation, or at least to a part thereof, for the use and occupation of the land if the defendants be liable therefor. The plaintiff at least has not such an interest in the street as to entitle him in case of this quasi trespass to charge the defendant with the damages sought as a penalty for the trespass.

The ownership of this fee in the highway, however, is a substantial property right as an appurtenant to the block of land just south of this highway. In case of the abandonment of Alabama street the plaintiff, by his ownership of the fee of this highway, would still have the right of way to Scott street to the north, which might be a most valuable right in connection with the use of this parcel of land to which it is appurtenant.

The present beneficial use of the plaintiff in the fee of this highway over which defendant's bridge runs can be little more than that of a right of way. If the street be abandoned we cannot see how it can even then be more. In case of its abandonment the defendant as the grantee of land upon both sides of this highway would have a private easement of access and egress therein as in a highway. Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052; Lord v. Atkins, 138 N. Y. 184, 33 N. E. 1035. The plaintiff has been injured by the acts of the defendant, therefore, practically to the extent that his right of way has been impaired by the obstructions placed therein. With a headway of 12 feet under the tracks we cannot conceive that there can be, even with the placing of the iron pillars in the street, such an obstruction to the plaintiff's right of way as can be very substantial. If the damage to the plaintiff be nominal, it would seem under the case of O'Reilly y. New York Elevated Railroad Company, 148 N. Y. 347, 42 N. E. 1063, 31 L. R. A. 407, that the plaintiff should be denied relief. It cannot be said, however, as matter of law that the plaintiff's damages are merely nominal. Upon the trial of the action the plaintiff showed the rental value of this bridge upon the theory that he had become the owner of the bridge and was entitled to collect its rental value from the defendant under the De Camp Case

above cited. The court overruled defendant's objection that such was not the proper rule of damages and allowed the evidence. After the decision was informally announced plaintiff made application to the court to be allowed to prove substantial damages, that is the difference in the value of this parcel of land owned by him with his highway obstructed and unobstructed. The plaintiff was not allowed to prove these damages, and the court held that the damages suffered were merely nominal. Having ruled with the plaintiff that the measure of damage upon which he offered evidence was the proper measure of damage the plaintiff .had the right to rely thereupon and when the trial court afterwards held that it was not the proper measure of damage the plaintiff should have been allowed to make proof of his damage under the proper rule. It seems to have been held that the plaintiff in this case has no legal action of ejectment. Coatsworth v. Lehigh Valley Railway Company, 29 App. Div. 627, 52 N. Y. Supp. 1139. If his damage be substantial this then is his only .remedy except successive legal actions for damages, the necessity for which it is the endeavor of the court to avoid. In the O'Reilly Case cited, Judge Gray, at page 357 of 148 N. Y., page 1065 of 42 N. E. (31 L. R. A. 407), says:

"A court of equity has a certain latitude in the exercise of its great power and under no authority or rule, with which I am acquainted, is it compelled to grant an injunction in a case like the present one; which belongs to a peculiar class and is governed by a doctrine of recent growth in the courts. The court recognizes the fact that the defendants had the right to appropriate the street easements by condemnation proceedings and, hence. when appealed to, to enjoin them from operating their franchises, it looks into the question of the substantial nature of the damage alleged to have been done to the property, or of the loss suffered by the owner. If it is found to be such, then the court proceeds in the matter as though the proceeding was one to condemn to the defendants' uses the property appropriated, and, having ascertained the value of the property, it suspends the decree, which it finds the plaintiff is entitled to to restrain the continuance of the defendants' acts, for a sufficient period within which to permit the defendants to acquire the right to appropriate the easements through a conveyance, as a condition of avoiding the enforcement of the decree. The proceedings, by which the court ascertains and fixes the damages done to the abutting property in the deprivation of easements. are, in fact, but a substitute for condemnation proceedings. If the plaintiffs fail to establish that substantial injury has been inflicted upon their property a decree enjoining the operation of the railroad would be unwarranted. One of the very grounds, and a main one, upon which equity proceeds in granting relief, by way of injunction against the unlawful acts of the defendants, would have been wanting if no actual and irreparable damage were shown."

We conclude, therefore, that the plaintiff should have been allowed to make proof of what actual damage was caused to his property by this partial obstruction of his right of way. If after the proof is in the court should be of opinion that the damage was nominal then under the authorities cited the injunction should not be granted. If, however, upon the proof it should appear that substantial damage is caused by this obstruction the plaintiff is entitled to some relief, the extent of which is for the trial court first to consider and determine.

The judgment should therefore be reversed, and a new trial granted, with costs to abide the event. All concur.