CONTINENTAL SECURITIES CO. et al. v. BELMONT et al.

(Supreme Court, Special Term, Nassau County. February 2, 1912.)

1. PLEADING (§ 350*)—JUDGMENT ON PLEADINGS.

The court, on motion for judgment for defendant on the pleadings as authorized by Code Civ. Proc. § 547, must accept as true such facts as are provable under the complaint and those supported by reasonable implication, and determine whether such facts constitute a cause of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1070–1077; Dec. Dig. § 350.*]

2. CORPORATIONS (§ 320*)—ACTIONS BY STOCKHOLDERS ON BEHALF OF CORPORATION—PARTIES.

Where an action by a stockholder is derivative and merely incidental to that of the corporation, the action must be brought on behalf of all the stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

3. CORPORATIONS (§ 320*)—ACTIONS BY STOCKHOLDERS ON BEHALF OF CORPORATION—COMPLAINT—REQUISITES.

A complaint in a derivative action by a stockholder must state a cause of action in favor of the corporation as though the corporation had brought the action, and it must allege that the corporation, on being applied to, refused to prosecute, unless the facts alleged show that a demand would be unavailing.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

4. PLEADING (§ 350*)—JUDGMENT ON PLEADINGS—ISSUES.

The court, on motion by defendant for judgment on the pleadings, will not consider the objection to the complaint, that a statement made on absolute knowledge amounts to perjury on plaintiff's part.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1070–1077; Dec. Dig. § 350.*]

5. PLEADING (§ 350*)—JUDGMENT ON PLEADINGS—ISSUES.

The court, on motion for judgment for defendants on the pleadings in an action by a stockholder suing on his own behalf and on behalf of other stockholders for a wrong done to the corporation cannot say as a matter of law that allegations as to the control of the corporation by the individual defendants are incapable of proof so as to make the complaint defective for insufficiently alleging a demand on the corporation to bring the action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1070–1077; Dec. Dig. § 350.*]

6. CORPORATIONS (§ 320*)—ACTIONS BY STOCKHOLDERS—RELIEF IN EQUITY.

A stockholder may sue in equity for relief for violations by the directors of their duty or for breaches of trust committed to them.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. CORPORATIONS (§ 320*)—ACTIONS BY STOCKHOLDERS—RELIEF IN EQUITY.

Where the complaint in a derivative action by a stockholder shows that the directors have made use of relations of trust and confidence to promote some selfish interest, equity may require an answer from the directors as to the facts alleged.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

8. CORPORATIONS .(§ 320*)—DERIVATIVE ACTION BY STOCKHOLDERS—COMPLAINT —REQUISITES.

Where the complaint in a derivative action by a stockholder alleges that the individual defendants are in control of the corporation and of the stock of its stockholders, it need not allege an appeal to the other stockholders for relief, since the facts alleged show that such an appeal would be futile.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

9. CORPORATIONS (§ 320*)—DERIVATIVE ACTION BY STOCKHOLDERS—COMPLAINT —REQUISITES.

Where a stockholder sues in equity, on behalf of himself and other stockholders and on behalf of the corporation, to set aside as fraudulent a transaction by officers of the corporation, the fact that the stockholder and his predecessor in interest acquiesced in the transaction complained of is available as a defense only, and the complaint need not negative such acquiescence.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

10. CORPORATIONS (§ 320*)—CONTRACTS—RESCISSION.

Where a majority of the directors or stockholders of a corporation, acting in bad faith, carry into effect a scheme which, though lawful on its face, is intended to circumvent the minority stockholders, the courts, will interfere and remedy the wrong, and such misconduct justifies an action by the corporation or, where it refuses to act, by a stockholder in its stead for the benefit of the injured stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

11. CORPORATIONS (§ 320*)—CONTRACTS—RESCISSION—TENDER.

Where a derivative action by a stockholder is brought for the rescission of a fraudulent contract, an offer to return is not an essential allegation of the complaint because the rights of the parties may be adjusted in the judgment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

12. CONTRACTS (§ 266*)—RESCISSION—OFFER TO RETURN.

Where a wrongdoer has so complicated matters as between himself and the party suing to rescind a fraudulent contract that restoration is impracticable, the party seeking relief need not offer to return, what was received under the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1186; Dec. Dig. § 266.*]

Action by the Continental Securities Company and another, stockholders in the Interborough Rapid Transit Company, on behalf of themselves and all other stockholders similarly situated and on behalf of the company, against August Belmont and others. Motion for judgment on the pleadings denied.

See, also, 132 N. Y. Supp. 1125.

---

Stephen M. Yeaman and J. Aspinwall Hodge, for plaintiffs.

Davies, Auerbach, Cornell & Barry and Nicoll, Anable, Lindsay & Fuller (De Lancey Nicoll, Joseph S. Auerbach, Courtland V. Anable, and Charles H. Tuttle, of counsel), for defendants other than the Interborough Rapid Transit Company.

STAPLETON, J.   Issue having been joined by the interposition of answers to the complaint, the individual defendants move for judgment upon the pleadings under section 547 of the Code of Civil Procedure.   The individual defendants postulate their claim to relief upon the ground that the complaint does not set forth facts sufficient to constitute a cause of action.   The suit is by two holders of stock in the defendant the Interborough Rapid Transit Company, on behalf of themselves and on behalf of said company, and of all stockholders thereof, similarly situated, for an account of 15,000 shares of the capital stock of the defendant corporation which were inequitably issued to and received by the individual defendants or their nominees, together with the dividends paid thereon, with interest, and for such other and further relief, by way of interlocutory or final judgment, as may be equitable and just.   The plaintiff the Continental Securities Company alleges that since January 27, 1906, it has been the holder of record of 300 shares of the capital stock of the Interborough Rapid Transit Company, except that on April 28, 1910, it transferred 50 shares; and the plaintiff Venner alleges that at the commencement of the action he was the holder of record of 50 shares.   Those 50 shares were the 50 shares transferred on April 28, 1910, by the corporate plaintiff.   The action was commenced on May 4, 1910.

The charge, briefly stated, is that the defendant Belmont, in association with the defendant Luttgen, was the promoter of the defendant corporation.   In May, 1902, acting at the instigation of the said Belmont, and being under his domination and control, the board of directors of the Interborough Rapid Transit Company issued $1,500,000 par value of the capital stock of the company to August Belmont & Co., composed of the defendants Belmont and Luttgen, in exchange for the securities of certain street surface railway lines which had cost that firm only $32,185.97, and for certain other pretended considerations.   It is alleged that the value of said 15,000 shares has been increased to $3,600,000, and that $761,250, dividends, have been paid out by the Interborough Rapid Transit Company upon said shares, to the holders thereof.   The answers of the defendants deny the charges in the complaint and plead the six-year statute of limitations.

[1] Section 547 of the Code of Civil Procedure, authorizing a motion for judgment on the pleadings, does not empower the court to determine issues of fact, and affidavits or evidence cannot be considered. The practice is the same as upon motion for judgment at the opening of a trial, and the same rule of disposition must be applied.   The moving party admits every material fact alleged in the pleading of his adversary, and is only entitled to judgment if such pleading be insufficient in law, or no issue of fact be raised.   Emanuel v. Walter, 138 App. Div. 818, 123 N. Y. Supp. 491; Realty Associates v. Hoage, 141 App. Div. 799, 126 N. Y. Supp. 709.

The rule for the guidance of the court in the examination of the complaint has been succinctly stated by Vann, J., in Flynn v. Brooklyn City Railroad Company, 158 N. Y. 493, at page 503, 53 N. E. 520, at page 523:

"For the purpose of this appeal, such facts as could properly have been proved under the allegations of the complaint, when supported by reasonable implication and fair intendment, must be accepted as true. * * * The question of primary importance is whether those facts constitute a cause of action against the defendants upon the merits, although due regard must be paid to any technical deficiencies that may exist."

[2] The cause of action of the plaintiffs being only secondary and derivative, and merely incidental to that of the corporation, the action must be brought, not only on behalf of the plaintiff, but also on behalf of the other stockholders of the company.

[3] In Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121, at page 124, 73 N. E. 562, at page 563, the court said:

"It is quite plain that the complaint in such an action should set forth but two things: First, the cause of action in favor of the corporation, which should be stated in exactly the same manner and with the same detail of facts as would be proper in case the corporation itself had brought the action; second, the facts which entitle the plaintiff to maintain the action in place of the corporation, that he is a stockholder therein, and that the corporation itself has either refused or unreasonably failed to bring the action. Ordinarily no other allegations are necessary or material."

In O'Connor v. Virginia Passenger & Power Co., 184 N. Y. 46, at page 52, 76 N. E. 1082, at page 1084, the court said:

"In a derivative action of the character of the present one, the complaint should allege that the corporation, on being applied to, refused to prosecute, and that this averment constitutes an essential element of the cause of action. Flynn v. Brooklyn City Railroad Co., 158 N. Y. 493 [53 N. E. 520]; Greaves v. Gouge, 69 N. Y. 154. * * * The general rule is subject to this exception: That where facts are alleged showing that a demand would be unavailing, a demand is unnecessary. Brinckerhoff v. Bostwick, 88 N. Y. 56; Barr v. New York, Lake Erie & Western Railroad Co., 96 N. Y. 444."

In Sage v. Culver, 147 N. Y. 241, at page 246, 41 N. E. 513, at page 513, the court said:

"Where a corporation is exclusively under the control of the trustees and officers whose acts and management are questioned, a demand that the corporation bring the action would be idle and fruitless, and in such cases equity permits the stockholder to bring the action in his own name. Brinckerhoff v. Bostwick, 88 N. Y. 52; Hawes v. Oakland, 104 U. S. 450 [26 L. Ed. 827]; Leslie v. Lorillard, 110 N. Y. 519 [18 N. E. 363, 1 L. R. A. 456]."

See Flynn v. Brooklyn City Railroad Co., 158 N. Y. 493, at page 509, 53 N. E. 520.

In O'Connor v. Virginia Passenger & Power Co., 184 N. Y. 46, at page 52, 76 N. E. 1082, at page 1084, the court said:

"If the complaint alleged that the directors of the corporation, at the time of the commencement of the suit, were the same as those who had committed the wrongs for which the suit is brought, it would relieve the plaintiff from making any demand on the corporation; for it may be assumed that such directors would not prosecute, or at least not prosecute in good faith, an action based on their own misconduct."

The complaint here alleges that the defendant is, and has been since the 6th day of May, 1902, a domestic corporation.

It was organized for the purpose of undertaking the construction, equipment, and operation of certain underground railways in the city of New York, which were then in process of construction under a contract between the city of New York and one McDonald, dated February 21, 1900, and agreements made amendatory thereof.

The capital stock of the defendant corporation was 'fixed at $25,-000,000, divided into 250,000 shares of $100 each, and prior to the 14th day of May, 1902, upwards of $9,200,000 of said stock had been subscribed.

The present capital stock of the company is $35,000,000; it having been increased to that amount in the month of September, 1902, by the issue of 100,000 additional shares.

The incorporators of the corporate defendant were all of the individual defendants, except the defendant Luttgen together with two others who at the time were attorneys and counsel of the defendants Belmont and Luttgen, and William H. Baldwin, Jr., Charles T. Barney, and E. P. Bryan; the last-named three persons having since died. Each of the 15 incorporators was a subscriber to 10 shares of the capital stock.

The directors, named in the certificate of incorporation, who were to, and did, constitute its board of directors for the year 1902, were the individual defendants, except the defendant Luttgen, and said Baldwin, Barney and Bryan; and a majority of them, to wit, the defendants Belmont, Freedman, Jourdan (who died since the commencement of the action), Lane, Pierce, Read, Vanderbilt, and Young, have been ever since, and at the time of the commencement of the action were, directors of the company.

During the years 1901 and 1902, and at all the times mentioned in the complaint, the banking firm of August Belmont & Co. consisted of the defendants Belmont and Luttgen, and the predominating influence was exercised by, and the control and interest in the firm was, at all the times mentioned in the complaint, and at the time of the commencement of the action, in the possession of the defendant Belmont.

The Pelham Park Railroad Company and the City Island Railroad Company were street railway corporations operating lines of street railways of unimportant character and conducting business with unproductive results.

The corporation known as the Rapid Transit Subway Construction Company was organized in the month of February, 1900, by the defendants Belmont and Luttgen, for the purpose of executing a bond required by the contract between McDonald and the city of New York, and the original incorporators of the construction company were the defendants Belmont, Oakman, Read, and McDonald, and the said Baldwin, Barney, and Bryan, the last four now deceased.

All of the individual defendants were promoters and organizers of the construction company, and all of them, except Luttgen, were named as directors in its certificate of incorporation. All of them, except Luttgen, were, on the 14th day of May, 1902, directors and stockholders of the construction company, and were in control of it, and owned a majority of the capital stock, some of it standing in their

names and some of it standing of record in the names of others; and the said construction company was largely indebted to them, or some of them.

The defendant Belmont, during the month of December, 1901, and January, February, March, April, and May, 1902, in association with the defendant Luttgen, was the promoter of the defendant corporation and caused the same to be organized. He controlled the incorporators, all of whom were his nominees, and two of whom were his counsel. He nominated, and had a controlling influence in, the board of directors named in the certificate of incorporation. He was himself an incorporator, stockholder, and director. He was elected president of the corporation at the first meeting of the board, on May 14, 1902; in accordance with an agreement entered into prior to the organization of the company, and he continued to be the president and chairman ex officio of all committees thereafter, during all the times mentioned in the complaint. He selected, and at all times thereafter controlled, three voting trustees, to whom, on or shortly after the 15th day of May, 1902, was transferred of record all the outstanding stock of the defendant corporation, except certain shares, less than $250 in number. He was, at one and the same time, the vendor and (as promoter, incorporator, officer, and director of the corporation) vendee, and claimed to be the broker, entitled to liberal and excessive commissions, in each important transaction by which the defendant corporation acquired its properties upon its organization, and for which it issued many millions of dollars of stock.

The defendants Belmont and Luttgen received $75,000 from the defendant corporation for the services of the firm in acting as financial agents from the 6th day of May, 1902, to the 6th day of May, 1903.

On the 14th day of May, 1902, the first meeting of the stockholders and incorporators was held, at which all of the defendants, except the defendant Luttgen, were present, and each voted 10 shares of the stock of the company, for which he had subscribed.

At that meeting there was presented, by the defendant Belmont and the defendant Luttgen, a communication and statement showing that they had received in cash from subscribers to the stock of the company, for the account of the defendant corporation, 10 per cent. of $9,200,-000, the aggregate par value of 92,000 shares of the capital stock of the company, which had been duly subscribed, and asked for the privilege of subscribing for 22,000 additional shares at $110 per share, under terms and conditions, as to payment, favorable to them.

The list of subscribers was presented to the meeting and entered upon the books of the defendant corporation, and the defendants Belmont and Luttgen were accorded the privilege of subscribing to $2,200,-000 par value of the capital stock on the favorable terms requested by them.

Thereafter, the 15 stockholders, voting together 150 shares out of upwards of 110,000 shares outstanding, without notice, and without the presence of any other stockholders, and in the absence of a quorum, unanimously passed the following resolution:

"Resolved, that this corporation do purchase from August Belmont & Co. the capital stock, or voting trust certificates therefor, of the Rapid Transit

Subway Construction Company, provided that all of said stock, or voting trust certificates therefor, with the exception of not exceeding one hundred and thirty (130) shares, be delivered and duly paid for the same by the issue and delivery in exchange therefor of one hundred and sixty dollars ($160) par value of full paid nonassessable capital stock of this company for each share of the capital stock, or voting trust certificates therefor, of said Rapid Transit Subway Construction Company of the par value of one hundred dollars ($100) upon which sixty per cent. (60%) has been paid.

"Further resolved that this company do purchase of John B. McDonald the contract for the construction, equipment and operation of a Rapid Transit Railroad in the city of New York made between John B. McDonald and the city of New York acting by its board of Rapid Transit Railroad commissioners, dated February 21, 1900, as amended by certain other agreements between the same parties, and all interest which any parties other than the Rapid Transit Subway Construction Company have or may have or claim, in, and to, said contract or any portion of the profits to accrue to the contractor thereunder for the sum of two million, five hundred thousand dollars ($2,500,000) to be paid in full paid nonassessable capital stock of this company of the par value of two million five hundred thousand dollars ($2,-500,000)."

Thereafter the said stockholders, holding and voting 150 shares as aforesaid, passed the following resolution:

"Resolved, that this company do purchase of August Belmont & Co. one thousand nine hundred and seventy five (1,975) shares of the capital stock of the Pelham Park Railroad Company, of the par value of twenty-five dollars ($25) per share; one thousand nine hundred and thirty-five (1,935) shares of the capital stock of the City Island Railroad Company of the par value of twenty-five dollars ($25) per share; and twenty-seven thousand five hundred dollars ($27,500) in the first mortgage bonds of the Pelham Park Railroad Company, for the sum of one million, five hundred thousand dollars ($1,-500,000), to be paid by the issue and delivery of fifteen thousand (15,000) shares of the par value of one hundred dollars ($100) each in the full-paid nonassessable capital stock of this company, to such persons and in such amounts as the said August Belmont & Co. may direct; which said sum is also to cover full compensation to the said August Belmont & Co. for their services in procuring the assignment of the contract between John B. McDonald and the city of New York aforesaid, the sale to this company of the stock of the Rapid Transit Subway Construction Company, and the subscriptions to the remainder of the capital stock of this company."

The aforesaid resolution was presented and passed at said meeting without the knowledge of, and without notice to, any of the stockholders of the company, other than the aforesaid 15 stockholders owning 10 shares each, who were the only stockholders who were present, or who had notice of the said meeting of stockholders. The intention to pass such a resolution, and the fact that the action therein set forth had been taken, was concealed from all the other stockholders by the defendant.

On the 14th day of May, 1902, the board of directors of the defendant corporation had a meeting at which all of the individual defendants, except Luttgen, were present, and voted in the identical words of the resolution hereinbefore referred to.

Forthwith the various transactions authorized by the resolutions aforesaid were carried out and consummated, and in addition to the 22,000 shares of stock subscribed for by them, $1,500,000 par value of the capital stock of the defendant corporation was issued and delivered to the said August Belmont & Co. and to their nominees, in-

cluding certain of the defendants. No consideration was paid therefor, except the transfer as aforesaid to said defendant corporation of the stock and bonds of the Pelham Park Railroad Company, and the stock of the City Island Railroad Company.

The statement, in the resolution, that the $1,500,000 was to cover full compensation for certain services claimed to have been rendered by the defendants Belmont and Luttgen, was a pretense and subterfuge, designed to cover up the real transaction, and for the award of the $1,500,000 par value of the stock, no valid or adequate consideration was ever given.

There was no valid claim for any commission or for services, and the award represented an illegal bonus and gift to the defendants Belmont and Luttgen and their nominees, except so far as it represented the actual cost to them or their agents of the capital stock and bonds of the street surface railway companies.

The defendants Belmont and Luttgen were, at the time, the owners of the stock of these street surface railway companies and the bonds of the Pelham Park Railway Company, purchased by them for the sum of $32,185.97, and the individual defendants knew each and all of the facts in the complaint stated.

The defendants, who were thereafter officers and directors of the defendant corporation, actively concealed from the stockholders the transactions complained of.

On March 12, 1910, a written demand by one of the plaintiffs was made upon the president and directors of the Interborough Rapid Transit Company, the corporate defendant, to bring suit, on behalf of the Interborough Rapid Transit Company, against the persons who participated in the transactions referred to in the complaint, to recover for the corporate defendant the damages which plaintiffs allege it suffered as a result of the alleged illegal transactions referred to in the complaint.

No answer to the communication was ever received by the plaintiffs, or either of them, and no action was taken in compliance with the request.

The defendant corporation is, and always has been, dominated and controlled by the defendant Belmont and his individual codefendants, and they, together with the present directors of the said corporation, are opposed to any action by it, against him or his said codefendants, to compel them to account for the said 15,000 shares of the stock of the company, improperly issued as alleged, or to account for any liability on the part of any of the individual defendants, arising out of the transactions alleged in the complaint; but, on the contrary, they have sought and endeavored to justify the transactions.

All the transactions complained of in the complaint were planned by the defendant Belmont, and were done and performed by him and the other individual defendants, as part of an inequitable and illegal arrangement, scheme, and conspiracy, to enable the said defendant incorporators and directors, and the said firm of August Belmont & Co., to receive an extortionate and illegal bonus and profit out of the treasury of the defendant corporation, of which they were all trustees, charged with the duty of protecting the interests of the corporation

and its stockholders in all financial transactions with all persons dealing with it.

By reason of the improper, inequitable, and illegal issue of the said stock, as aforesaid, the defendant corporation, and all of its stockholders (except the defendants Belmont, Luttgen, and their nominees) have suffered damage in a sum equal to the dividends paid upon the said 15,000 shares of stock, from the year 1902 to date, with interest thereon, and, in a further sum, equal to the highest market price, of the said stock, since the said 14th day of May, 1902.

Dividends upon the said 15,000 shares were paid by the defendant corporation to the said defendants Belmont and Luttgen, their nominees and assigns, as follows: On July 1, 1904, 2 per cent. of the par value thereof; on January 1, 1905, 3 per cent.; on April 1, 1905, 1¾ per cent.; on July 1, 1905, 2 per cent.; on October 1, 1905, 2 per cent.; on January 1, 1906, 2 per cent.; on April 1, 1906, 2 per cent.; on July 1, 1906, and quarterly, thereafter on the first day of each quarter to, and including, April 1, 1910, 2¼ per cent.—amounting in the aggregate to the sum of $761,250, of which sum the defendant corporation has been deprived and defrauded, together with interest upon each of said dividends from the date upon which it was paid.

The highest market value of the said stock between the said 14th day of May, 1902, and the beginning of this action was $240 per share, so that the total and highest value of the said 15,000 shares, donated as aforesaid, to the said defendants Belmont and Luttgen, was $3,600,000, or such further increased value, as may be found to have accrued, at the time of final judgment herein.

The defendant corporation has been deprived and defrauded of such sum, less the sum of $32,185.97, the actual cost of the said stock and bonds of the said horse railway companies.

By reason of the above-recited transactions, the defendant corporation has suffered damage, up to the time of the commencement of this action, in upwards of the sum of $4,500,000 as aforesaid.

The prayer of the complaint is:

Wherefore, the plaintiffs, having no adequate remedy at law, pray this honorable court to exercise its equitable jurisdiction and powers, and

I. Decree, that the amount of loss, suffered by the defendant corporation, by reason of all the matters and things set forth herein, shall be ascertained and determined, and, that the individual defendants, and each of them, account for all of the fifteen thousand (15,000) shares of the defendant corporation, issued to or received by them or their nominees or assigns, together with the dividends paid thereon, with interest, and pay to the defendant corporation such sum as may be found due;

II. Grant judgment therefor against each of the individual defendants, and issue execution thereon;

III. Decree, that the defendant corporation shall pay to the plaintiffs, such sum as they may have expended in counsel fees, and other necessary disbursements, incurred in the prosecution of this action, on behalf of the said defendant corporation, and its stockholders, and that the plaintiff have judgment therefor, together with the costs and taxable disbursements of this action against all of the defendants;

IV. Grant such judgment in favor of any stockholders, who may join with the plaintiffs, in the prosecution of this action, and who may contribute to the expenses thereof, as they may be entitled to; and

V. Grant such other and further relief, by way of interlocutory decree, or final judgment, as may be equitable and just.

[4] It will be perceived that the complaint alleges that the defendant Belmont selected, and at all times thereafter controlled, three voting trustees, to whom, on or shortly after the 15th day of May; 1902 (it appears "1910" in the printed copies of the complaint; but this is obviously a clerical error; as action was commenced on May 4, 1910, and the complaint was verified on that day, and the context of the paragraph in which the error occurs clearly indicates that 1902 was the actual time designed to be stated) were transferred of record all the outstanding stock of the defendant corporation, except certain shares, less than 250 in number.

This statement is declared to be made on absolute knowledge. It cannot be entirely true, because plaintiffs have 300 shares. The defendants denounce it as perjury. Here is not the place, nor now the time, to give effect to that complaint if it be sound in law and accurate in fact.

[5] The other allegations, as to the control and domination of the defendant corporation by the defendant Belmont and his individual codefendants, may be difficult to believe, considering the multitudinous shares of stock and the magnitude of the enterprise, and I am led to take, for the expression of my views of the allegation, the language of Judge Cullen in Flynn v. Brooklyn City Railroad Co., 9 App. Div. 269, at page 279, 41 N. Y. Supp. 566, at page 572:

"We can appreciate the improbability of all the shareholders acting in bad faith against their own interests as shareholders, for some undisclosed advantage in another direction; but we cannot say, as a matter of law, that the allegation is incapable of proof to sustain it."

[6] In Dykman v. Keeney, 154 N. Y. 483, at page 490, 48 N. E. 894, at page 896, it was held:

"That an action in equity will lie by a stockholder against the directors of his corporation, for violations of their duty, or breaches of the trust committed to them, is well settled."

In O'Brien v. Fitzgerald, 143 N. Y. 377, 382, 38 N. E. 371, the doctrine was restated that a stockholder cannot sue at law, but is compelled to go into equity to obtain his relief, and this right of action is wholly and purely of an equitable character.

[7] By the decision of the Court of Appeals in Sage v. Culver, 147 N. Y. 241 and 247, 41 N. E. 513, 514, we are advised that

"When a trustee or officer or director of a corporation deals with himself as an individual, or in the character of trustee, director, or officer of another corporation, with respect to the funds, securities, or property of the corporation, the transaction is at least open to question by the corporation, or, in a proper case, by its stockholders, and the trustee is bound to explain the transaction and show that the same was fair and that no undue advantage has been taken by him of his position, for his own advantage or the advantage of some other corporation in which he has an interest.

"When it can clearly be gathered from all the allegations of the complaint, that the officers and directors of a corporation have made use of relations of trust and confidence in order to secure or promote some selfish interest, enough is then averred to set a court of equity in motion and to require an answer from the defendants in regard to the facts.

"When it appears that the trustee or officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self-interest and integrity, there is in equity a presump-

tion against the transaction, which he is required to explain. Cowee v. Cornnell, 75 N. Y. 100 [31 Am. Rep. 428]; Crowe v. Ballard, 1 Vesey, 221, note 2; Gibson v. Jeyes, 6 Vesey, 278; Michoud v. Girod, 4 How. 553 [11 L. Ed. 1076]; ·Butts v. Wood, 37 N. Y. 317; Ogden v. Murray, 39 N. Y. 207; Gardner v. Ogden, 22 N. Y. 332 [78 Am. Dec. 192].

"Parties holding relations of trust and confidence towards others, such as these defendants occupied towards the plaintiffs, cannot ordinarily afford to admit, by a demurrer, charges, though quite indefinite and uncertain, that they have made profit for themselves by means of transactions such as are clearly to be gathered from the averments of the complaint."

The individual defendants' specific assignments of fatal deficiencies in the complaint, as stated by themselves, are:

The complaint, therefore, fails to state facts sufficient to qualify the plaintiffs, who have recently acquired 300 of the 350,000 shares outstanding, to sue in the right of the corporation, in that it fails to allege: (1) That the plaintiffs revealed the facts to the other stockholders; (2) that the plaintiffs appealed for action to the body of the corporation, to wit, the stockholders or that such an appeal would have been futile; (3) that the plaintiffs have exhausted their means of redress within the body of the corporation; (4) that neither the plaintiffs themselves, nor their predecessors in interest, have acquiesced in the policy complained of, since they would be bound by such acquiescence; (5) that the complaint fails to state facts necessary in an action for a rescission.

[8] The first three assignments may be considered together.

The manifest zeal and recognized equipment of the learned counsel for the defendants have failed to reveal any reported decision in this state dismissing a stockholder's complaint for failing to allege an appeal to the other stockholders, and I am of the opinion that this case does not present the necessity or the opportunity for the application of the rule, established in other jurisdictions, that the plaintiff must allege with particularity the efforts of the plaintiff to secure such action as he desires, of the stockholders, and the causes of his failure to obtain such action.

The mandatory acceptance of the truth of the allegations of the complaint, to the effect that the defendants are in control of the corporation and of the stock of its stockholders, requires the court to conclude that an application to the stockholders to so constitute the directorate as to make certain the institution of a suit against the defendants for the relief here demanded, would be futile, and that, as far as this requirement could otherwise be imposed upon the institutor of a derivative action, it must be dispensed with in this case. Barr v. New York, Lake Erie & Wester R. R. Co., 96 N. Y. 444; Sage v. Culver, supra.

[9] Of the authorities cited by the defendants to sustain the validity of their fourth assignment of fatal deficiency in the complaint, to wit, the failure to allege that neither the plaintiffs nor their predecessors in interest have acquiesced in the acts complained of, only three (Trimble v. American Sugar Refining Co., 61 N. J. Eq. 340, 48 Atl. 912; Venner v. Atchison, T. & S. F. R. Co. [C. C.] 28 Fed. 581, 591; Church v. Citizens' St. R. Co. [C. C.] 78 Fed. 526) arose upon demurrer, and all of them were pronounced in jurisdictions

where the old rules of equity pleading still obtain, which, under certain circumstances, require allegations of a negative character in order to invoke equity jurisdiction. I conceive the law to be, here, that the assent or acquiescence, and the estoppel established thereby, is a matter of defense, and the failure to negative it is not destructive of the complaint. Pollitz v. Gould, 202 N. Y. 11, 16, 94 N. E. 1088; Brazill v. Isham, 12 N. Y. 9, 17; Coatsworth v. Lehigh Valley R. R. Co., 115 App. Div. 7, 100 N. Y. Supp. 504.

The fifth assignment is that the complaint fails to state facts necessary in an action for a rescission.

The validity of this assault upon the plaintiffs' pleading is dependent upon the assumption that in its statement the nature of the action is fitly described.

[10] In my judgment, the action is not one for the rescission of a fraudulent contract. Its nature has been judicially stated:

"Where a majority of the directors, or stockholders, or both, acting in bad faith, carry into effect a scheme which, even if lawful upon its face, is intended to circumvent the minority stockholders and defraud them out of their legal rights, the courts interfere and remedy the wrong. Action on the part of directors or stockholders, pursuant to a fraudulent scheme designed to injure the other stockholders, will sustain an action by the corporation, or, if it refuses to act, by a stockholder in its stead, for the benefit of all the injured stockholders. Leslie v. Lorillard, 110 N. Y. 519, 535 [18 N. E. 363, 1 L. R. A. 456]; Gamble v. Queens County Water Co., 123 N. Y. 91 [25 N. E. 201, 9 L. R. A. 527]; Sage v. Culver, 147 N. Y. 245 [41 N. E. 513]; Farmers' Loan & Trust Co. v. N. Y. & N. Ry. Co., 150 N. Y. 410 [44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689]; Hawes v. Oakland, 104 U. S. 450 [26 L. Ed. 827]."

[11, 12] It may not be amiss to state that, even if the action were for rescission, the offer to return is not an essential allegation of a complaint in equity, where rights may be adjusted in the judgment, and also that always, amongst the exceptions to the rule requiring restoration, is the case where it may be manifested upon the trial that the wrongdoer had so complicated matters, as between himself and the party seeking relief, that restoration is entirely or partially impossible or impracticable. Heckscher v. Edenborn, 203 N. Y. 210, 227, 96 N. E. 441; Pritz v. Jones, 117 App. Div. 643, 651, 102 N. Y. Supp. 549.

I reach the conclusion that the objections to the complaint, assigned by the individual defendants, are not substantial, and that the complaint states facts sufficient to constitute a cause of action.

The motion for judgment on the pleadings must therefore be denied, with $10 costs. Settle order on two days' notice.