SELWYN & COMPANY, Respondent, *v.* LEWIS WALLER, Defendant, and LEE SHUBERT, Appellant.

Contract — agreement to produce a play and share profits and losses — concealment by one of the parties of prior assignment of royalties of authors to him — action under such assignment — rights and equities of parties.

1. Parties about to engage in a joint adventure, whether as partners *inter sese* or not, owe to each other the utmost good faith and the most scrupulous honesty, and good faith requires that neither shall make a secret profit out of the undertaking.

2. Under an agreement for the production of a play, and the sharing of profits and losses, including the payment of royalties to the authors, one of the parties is bound in good faith to disclose to his associate in the enterprise the fact that he had previously acquired from the authors a one-fourth interest in such royalties. On failing to so disclose his ownership, the secret holding of the wrongdoer will, in an action to recover such royalties, be impressed with a trust in favor of the joint enterprise.

3. In such case there is no element of estoppel involved, and an assignor of the parties so contracting takes subject to the prior equities as well of third parties as of. the original owners.

*Selwyn & Co.* v. *Waller*, 160 App. Div. 725, reversed.

(Argued June 5, 1914; decided September 29, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 13, 1914, which affirmed an order of Special Term sustaining a demurrer to the answer.

The following questions were certified: "1. Is the first, separate and affirmative defense contained in the answer of the defendant Shubert herein sufficient in law upon the face thereof?

"2. Is the second, separate and affirmative defense contained in the answer of the defendant Shubert herein sufficient in law upon the face thereof?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter H. Pollak* and *William Klein* for appellant. Waller's action in concealing from Shubert his interest in the authors' royalties which their firm paid was a wrong to Shubert. (*Platt* v. *Platt*, 2 T. & C. 25; Parsons on Part. [4th ed.] 192, 193; Lindley on Part. [8th ed.] 364; *Mitchell* v. *Reed*, 61 N. Y. 123; Kerr on Fraud & Mistake [4th ed.], 175; *Butler* v. *Prentiss*, 158 N. Y. 49; *Snider* v. *Lindsay*, 157 N. Y. 616; *Holmes* v. *Gilman*, 138 N. Y. 369; *Harlow* v. *La Brum*, 151 N. Y. 278; *Manufacturers' Nat. Bank* v. *Cox*, 2 Hun, 572; 59 N. Y. 659; *Getty* v. *Devlin*, 54 N. Y. 403; *Kelly* v. *Delaney*, 136 App. Div. 604; *Kimberly* v. *Arms*, 129 U. S. 512; *Maddeford* v. *Austwick*, 1 Sim. 89.) Plaintiff's complaint is clearly demurrable. Shubert, by his contract with Waller, merely agreed to assume in his two-thirds proportion such obligations as were imposed upon the latter by his contract with Frohman. No obligation to pay the share of authors' royalties in suit — a share of authors' royalties which Waller himself owned at the time he made his contract with Frohman — was imposed, could be imposed, or was sought to be imposed, upon Waller when he and Frohman made their agreement. (*Baxter* v. *McDonnell*, 154 N. Y. 432.)

*Melville H. Cane* for respondent. Waller was not guilty of a breach of trust in not disclosing to Shubert his ownership of one-fourth of the royalties. (*Matter of Coal E. G. Co.*, L. R. [1 Ch. Div.] 182; *Skolny* v. *Richter*, 139 App. Div. 534; *Densmore Oil Co.* v. *Densmore*, 64 Penn. St. 43; *M. C. S. Co.* v. *Dexter*, 99 Wis. 214.) The appellant should not be permitted to repudiate the obligations of his contract while reaping its benefits. (*Nirdlinger* v. *Bernheimer*, 153 N. Y. 652; 1 Perry on Trusts [6th ed.], 318; *Burr* v. *De La Vergne*, 102 N. Y. 415; *Obermayer* v. *Geering*, 146 App. Div. 927; *Peters* v.

*Borst,* 24 Abb. [N. C.] 1; *Hapgood* v. *Hewitt,* 119 U. S. 226.)

MILLER, J. The question of law involved in this appeal arises from the following facts, to state them as briefly as possible: On the 6th of May, 1911, Charles Frohman entered into a contract with Edward G. Hemmerde and Francis Neilson by which, in consideration of the payment to them of three hundred pounds and an agreement to pay certain stipulated authors' royalties, to be computed on the gross weekly receipts, Hemmerde and Neilson granted to Frohman the sole and exclusive right for five years to perform and have performed in the United States and Canada a play entitled "The Butterfly on the Wheel;" in December, 1911, Frohman transferred his rights under said contract to the defendant Waller, who agreed to hold the former harmless against any claim which Hemmerde and Neilson might thereafter assert against him in connection with the said agreement of May 6th; in the meantime, Hemmerde and Neilson had assigned to said defendant a twenty-five per cent interest in all authors' royalties earned or to be earned from any and all performances of said play in the United States and Canada under all contracts made or to be made therefor; thereafter, and on the 29th of December, 1911, the defendants Waller and Shubert entered into a contract to produce said play in the United States and Canada, "not as partners," but with a sharing of profits and losses in the percentage of thirty-three and one-third per cent to the former and sixty-six and two-thirds per cent to the latter, the former's losses in no event to exceed $2,500, and the latter agreeing to assume in his two-thirds proportion the former's obligation to Frohman under the contract for the purchase of his rights; Waller concealed from Shubert the fact of his ownership of a one-fourth interest in the authors' royalties; the play was produced as agreed upon and the

authors' royalties under the Frohman contract were paid up to some time in October, 1912, in the belief by Shubert that Hemmerde and Neilson were the sole owners thereof, but Waller secretly retained or received from the authors twenty-five per cent of said payments; in October, 1912, Waller assigned to the plaintiff a twenty-two and one-half per cent interest in said royalties, and this action is brought to recover that proportion of the royalties alleged to have been thereafter earned. The appellant asserts that Waller's concealment was a fraud upon him, and that by reason thereof equity should impress a trust for the benefit of the joint enterprise on the interest in the authors' royalties secretly held by Waller. The two defenses demurred to are alike except that, in the second, it is alleged, as it is not in the first, that the plaintiff obtained its assignment from Waller with the knowledge of his alleged fraud upon Shubert.

The only agreement ever made by the appellant Shubert to pay royalties was in his assumption in his two-thirds proportion of Waller's obligation to Frohman. That was an obligation to save the latter harmless from any claim of Hemmerde and Neilson. They could only have had a valid claim to three-fourths of the stipulated royalties as they had assigned the other one-fourth to Waller. Apart from any question of fraud, therefore, it is impossible to discover from the facts pleaded any contract obligation of said appellant to pay more than his share of the royalties due to Hemmerde and Neilson. True, he supposed that he had agreed to pay two-thirds of the royalties stipulated for in the Frohman contract, a circumstance which might bear on the materiality of the fact concealed from him by Waller, but which does not alter the fact that, according to the terms of his contract, he was obligated to pay only two-thirds of any claim which Hemmerde and Neilson could assert against Frohman, namely, for the three-fourths of the stipulated royalties which they still owned.

Leaving out of view the weakness in the plaintiff's case, we come to the interesting question debated below, namely, whether Waller's concealment of his interest in the authors' royalties was a fraud upon the appellant which entitled him to appeal to the jurisdiction of equity to impress a trust upon that interest for the benefit of the joint venture. Of course, that question is of importance in this case only on the assumption that the appellant did agree to pay two-thirds of the royalties stipulated for in the Frohman contract, and I shall proceed on that assumption.

It may be admitted that the question lies on the boundary between the domain of law and that of ethics. A majority of the Appellate Division were of the opinion that no duty rested on Waller to disclose his interest because it made no difference to Shubert to whom the royalties were paid. That position overlooks the fact that in assuming two-thirds of Waller's obligation to Frohman, Shubert was interested in knowing precisely what that obligation was, and it takes a too narrow view of the duties of parties about to engage in a joint adventure, whether as partners *inter sese* or not. It is now well settled that persons in, or about to assume, that relation owe to each other the utmost good faith and the most scrupulous honesty. (*Getty* v. *Devlin,* 54 N. Y. 403; *Mitchell* v. *Reed,* 61 N. Y. 123; *Kimberly* v. *Arms,* 129 U. S. 512.) They do not deal at arms' length. The very fact that one conceals his true interest from the other indicates a purpose to gain some advantage at the other's expense or a belief that disclosure would influence the other in deciding whether and upon what terms to embark on the enterprise. Good faith requires that neither shall make a secret profit out of the undertaking. The rule against secret profits is not limited in its application to cases of agency, trusteeship and the like strictly fiduciary relations. Its application to a case like this depends on the reciprocal good faith required

of joint adventurers and more precisely upon the mutual burdens and benefits which the relation necessarily implies are to be shared in the stipulated proportions. If Waller had acquired his interest in the authors' royalties after making the contract with the appellant, he would plainly have been bound to give the joint undertaking the benefit of it. That the concealment of his interest at the time of making the contract puts him in the same case is settled in this state by authority. (*Getty* v. *Devlin, supra.*) It begs the question to say that it was immaterial to the appellant to whom the royalties were paid. If the duty of disclosure existed, the law will not impose upon the party wronged the often impossible task of establishing pecuniary damage or that he would not have embarked on the undertaking if disclosure had been made. The case is precisely the same in principle as though Waller had owned the entire interest in the authors' royalties and, concealing the fact, had induced his co-adventurer to purchase it outright from the apparent owners at a large advance over the cost to him, the familiar case of promoter's secret profits. Indeed, in some aspects, Waller's position is worse than that of the typical dishonest promoter who takes his illicit profit at the inception of the enterprise. Waller had secretly arranged to receive a percentage, not of the profits, but of the gross receipts of the business, so long as it continued, although he had stipulated to share profits and losses in stated proportions. It is unnecessary accurately to measure the extent or precisely to determine the nature of the injury which was, or might thus have been, done to Shubert. That injury might have resulted is obvious. It is sufficient to determine that Waller was guilty of the breach of a legal duty, of the failure to conform to the high standard of honesty and good faith which the law exacts of one partner or co-adventurer towards the others. In our opinion that standard should not be lowered by putting dubious conduct outside of the domain of

law, especially as exact justice can always be done by making the wrongdoer a trustee of his secret interest for himself and his associates.

Cases holding that the promoter of an enterprise may openly sell to his company or his associates on the basis of the ordinary vendor and vendee have no application. If Waller had disclosed his interest in the authors' royalties it doubtless would have been for Shubert to inquire, if he wanted to know, what was paid for it.

The respondent does not appear to question the appellant's contention that the plaintiff acquired only what its assignor had to sell. No element of estoppel being involved, it seems plain that the plaintiff took subject to the prior equities as well of third parties as of the original owners. At any rate, that is the settled law of this state. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Moore* v. *Metropolitan National Bank*, 55 N. Y. 41; *Cutts* v. *Guild*, 57 N. Y. 229; *Fairbanks* v. *Sargent*, 104 N. Y. 108; *Owens* v. *Evans*, 134 N. Y. 514; *Central Trust Company of N. Y.* v. *West India Improvement Company*, 169 N. Y. 314.)

Both questions should be answered in the affirmative, the orders of the Appellate Division and of the Special Term should be reversed, with costs in all courts, and the demurrers overruled, with costs.

WERNER, HISCOCK, CHASE and HOGAN, JJ., concur; WILLARD BARTLETT, Ch. J., not voting; CARDOZO, J., not sitting.

Orders reversed, etc.