(95 Misc. Rep. 332)

## GUGGENHEIM v. GUGGENHEIM et al.

(Supreme Court, Special Term, Kings County. May 27, 1916.)

1. PLEADING ☞345(1)—JUDGMENT ON PLEADINGS—WHEN AUTHORIZED.

Under Code Civ. Proc. § 547, providing for judgment on the pleadings, at any time after issue joined, on motion of the party entitled thereto, such judgment cannot be ordered, if the pleadings show the adverse party entitled to any relief, legal or equitable, although the judgment demanded is not the precise relief to which he is entitled.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055, 1057–1059; Dec. Dig. ☞345(1).]

2. PLEADING ☞350(3)—MOTION FOR JUDGMENT ON PLEADINGS—EFFECT.

A defendant, by moving for judgment on the pleadings, under Code Civ. Proc. § 547, admits every material allegation of fact in the complaint.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1075, 1077; Dec. Dig. ☞350(3).]

3. PLEADING ☞345(1)—JUDGMENT ON PLEADINGS—WHEN AUTHORIZED.

Under Code Civ. Proc. § 547, authorizing judgment on the pleadings at any time after issue joined, moving party is entitled to judgment only if the pleadings assailed are insufficient in law, or if no issue of fact is raised.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1055, 1057–1059; Dec. Dig. ☞345(1).]

4. PLEADING ☞350(3)—JUDGMENT ON PLEADINGS—ISSUES DETERMINABLE.

Issues of fact must be determined at the trial, and cannot be summarily determined on a motion for judgment on the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1075, 1077; Dec. Dig. ☞350(3).]

5. PLEADING ☞34(6)—MOTION FOR JUDGMENT ON PLEADINGS—CONSTRUCTION OF PLEADINGS.

Upon a motion for judgment on the pleadings, under Code Civ. Proc. § 547, the pleadings must be construed, in so far as matters of form are concerned, in favor of the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 72, 73; Dec. Dig. ☞34(6).]

6. PLEADING ☞350(3)—CONSTRUCTION ON MOTION FOR JUDGMENT.

On a motion for judgment on the pleadings, the answer cannot be considered in determining whether the complaint states a cause of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1075, 1077; Dec. Dig. ☞350(3).]

7. PARTNERSHIP ☞120—ACTIONS BETWEEN PARTNERS—DAMAGES FOR FRAUD.

The complaint in an action by one partner against his copartners for damages in procuring a contract relinquishing his right of participation in partnership ventures, and by fraudulently concealing facts material to the transaction, held in view of Code Civ. Proc. §§ 481, 519, to state a cause of action.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 182, 183; Dec. Dig. ☞120.]

8. PARTNERSHIP ☞70, 98—GOOD FAITH—FRAUDULENT CONCEALMENT OF MATERIAL FACTS.

Partners owe to each other the exercise of the most scrupulous good faith, and where one partner, by concealing material facts within his own knowledge, procures an unfair or inequitable advantage over a copartner, such conduct is fraud, and the transaction is void.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 114, 152; Dec. Dig. ☞70, 98.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by William Guggenheim against Isaac Guggenheim and others. On motion by defendants for judgment on the pleadings. Motion denied.

Stephen C. Baldwin, of Brooklyn (Stephen C. Baldwin, of Brooklyn, and Henry A. Uterhart, of New York City, of counsel), for plaintiff.

Guggenheimer, Untermyer & Marshall, of New York City (Louis Marshall, Francis Lynde Stetson, John B. Stanchfield, and William D. Guthrie, all of New York City, of counsel), for defendants.

BENEDICT, J.   The defendants, having served an amended answer herein, move for judgment dismissing the complaint herein on the pleadings, pursuant to section 547 of the Code of Civil Procedure. It was contended upon the argument of the motion, on behalf of the defendants, that the complaint does not state facts sufficient to constitute a cause of action; but, notwithstanding the very able and complete statement of the grounds of this objection contained in the briefs submitted by their counsel, I am unable to concur in their contention.

[1] The Code has laid down certain fundamental rules to be observed by pleaders, and to be given effect by the court, concerning the matters proper to be stated in a complaint:

"The complaint must contain * * * a plain and concise statement of the facts constituting each cause of action without unnecessary repetition." Section 481.

And it is also provided that:

"The allegations of a pleading must be liberally construed, with a view to substantial justice between the parties." Section 519.

In addition to these general provisions, the Code was, in 1908, amended by the addition of the new section 547, which provides that:

"If either party is entitled to judgment upon the pleadings, the court may, upon motion at any time after issue joined, give judgment accordingly."

This section has been very extensively availed of by litigants and has been the subject of much judicial consideration. I shall advert briefly to some of the rules concerning it which the courts have laid down. In Clark v. Levy, 130 App. Div. 389, 114 N. Y. Supp. 890; it was held that the purpose of the section was to obviate the necessity of waiting until the trial to make such a motion; but the rules are the same as where the motion is made at trial, and the defendant is not entitled to judgment if the complaint entitles the plaintiff to any relief, legal or equitable, even though the judgment demanded be not the precise relief to which he is entitled—citing Wetmore v. Porter, 92 N. Y. 76; Hotel Register Co. v. Osborne, 84 App. Div. 307, 82 N. Y. Supp. 609. See, also, to same effect, Dineen v. May, 149 App. Div. 471, 134 N. Y. Supp. 7; Olsen v. Singer Mfg. Co., 143 App. Div. 142, 127 N. Y. Supp. 697; Delmar v. Kinderhook Co., 134 App. Div. 558, 119 N. Y. Supp. 705; National Park Bank v. Billings, 144 App. Div. 536, 129 N. Y. Supp. 846, affirmed 203 N. Y. 556, 96 N. E. 1122; Schleissner v. Goldsticker, 135 App. Div. 435, 120 N. Y.

Supp. 333; O'Rourke v. Patterson, 157 App. Div. 284, 142 N. Y. Supp. 195; Perrin v. Smith, 135 App. Div. 127, 119 N. Y. Supp. 990.

[2] A defendant, by moving for judgment under this section, admits every material allegation of fact contained in the complaint, and the court must assume that the allegations are true. De Wolf v. Ford, 193 N. Y. 397, 86 N. E. 527, 21 L. R. A. (N. S.) 860, 127 Am. St. Rep. 969; Clark v. Levy, supra; Ship v. Fridenberg, 132 App. Div. 782, 117 N. Y. Supp. 599; Felt v. Germ. L. Ins. Co., 149 App. Div. 14, 133 N. Y. Supp. 519; Longenecker v. Longenecker Bros. (Sup.) 140 N. Y. Supp. 403, where I had occasion to notice this point and to consider the cases.

[3] The moving party is only entitled to judgment if the pleading moved against be insufficient in law, or if no issue of fact be raised. Per Stapleton, J., in Continental Sec. Co. v. Belmont, 75 Misc. Rep. 234, 237, 133 N. Y. Supp. 560, affirmed in 150 App. Div. 298, 134 N. Y. Supp. 635, and in 204 N. Y. 7, 99 N. E. 138, 51 L. R. A. (N. S.) 112, Ann. Cas. 1914A, 777.

[4] Issues of fact must be determined on the trial; and, although a party may, as a matter of law, be entitled to part of the relief demanded, relief should not be granted piecemeal, but the motion for judgment should be denied in toto. Emanuel v. Walter, 138 App. Div. 818, 123 N. Y. Supp. 491.

[5] Where an issue of fact exists, it must be disposed of upon the trial, and it cannot be summarily disposed of on a motion for judgment on the pleadings. Simon v. Bierhauer, 154 App. Div. 506, 139 N. Y. Supp. 327; Godwin v. Liberty-Nassau Building Co., 144 App. Div. 164, 128 N. Y. Supp. 791. "Upon such a motion, not only must the complaint be liberally construed (Code Civ. Proc. § 519), but such construction, so far as matters of form are concerned, must be in favor of and not against the pleading." Per Burr, J., in Catterson v. Brooklyn Heights R. R. Co., 132 App. Div. 399, 116 N. Y. Supp. 760, citing cases. See, also, Crotty v. Erie, R. R. Co., 149 App. Div. 262, 133 N. Y. Supp. 696, and McCarthy v. Heiselman, 140 App. Div. 240, 125 N. Y. Supp. 13.

[6] Where an answer has been served, its allegations cannot be considered in determining, upon a motion of this nature, whether the complaint fails to state facts sufficient to constitute a cause of action. People v. O'Brien, 157 App. Div. 119, 141 N. Y. Supp. 1046, affirmed on this point in 209 N. Y. 366, 369, 103 N. E. 710. The complaint in the present case alleges as follows:

Paragraph "First" of the complaint alleges the formation of a partnership between the plaintiff and the defendants, who are plaintiff's brothers, together with their father, Meyer Guggenheim, and a brother, Benjamin Guggenheim, for the purposes set forth in a written agreement which is annexed to the complaint as Exhibit A. This Exhibit A, after providing that, upon the death of any one of the partners, the business shall be carried on until the expiration of a year from the death of the first partner so dying, then provides for the business to be conducted as follows:

"It is further agreed that the business of the said copartnership shall be: (1) The business that was being carried on at the date of these presents by

the said copartnership of M. Guggenheim's Sons, of which this agreement provides for a continuance, with the introduction as partners into said copartnership of the said Benjamin Guggenheim, Simon Guggenheim, and William Guggenheim, except the business of holding and working said mines, which business shall be conducted only by said Isaac Guggenheim, Daniel Guggenheim, Morris Guggenheim, and Solomon Guggenheim until the payment for said stock and delivery of certificates, as aforesaid; (2) any other lawful business which the parties to this agreement shall mutually agree to undertake."

This agreement further provided for a division of profits and losses, and also contained the following:

"The said Isaac Guggenheim, Daniel Guggenheim, Morris Guggenheim, and Solomon Guggenheim agree not to embark into any new business except hereunder; but said Isaac Guggenheim, Daniel Guggenheim, Morris Guggenheim, and Solomon Guggenheim, who constituted said firm of M. Guggenheim's Sons, may deal with the assets of said firm enumerated in the schedule of even date herewith, at their pleasure and in their absolute discretion, but no enterprise or business not on said schedule shall be carried on, except by the partnership hereby constituted."

The complaint further alleges that Meyer Guggenheim and Benjamin Guggenheim have died since the formation of the partnership, and that neither of them participated in any of the acts therein complained of.

Paragraph "Second" of the complaint set forth the continuance of the partnership for more than two years after the death of Benjamin Guggenheim on April 15, 1912, and that the defendants, on April 20, 1914, published a notice of dissolution of the partnership, and it alleges:

"On information and belief, that thereafter the business of the said firm of M. Guggenheim's Sons was duly liquidated, and that, so far as plaintiff is informed, no claim exists in his favor against said firm, and that the claim hereinafter set forth is not asserted against the said firm of M. Guggenheim's Sons, nor against any of the surviving partners thereof, but is asserted as a claim against the defendants individually for damages by reason of their acts, which hereinafter will be more particularly set forth and described."

Paragraph "Third" alleges the obligations of the defendants as the plaintiff's partners to act towards him in the highest good faith, and that they should not, by the slightest misrepresentation, concealment, or otherwise, secure to themselves any advantage over the plaintiff.

Paragraph "Fourth" alleges that, immediately following the execution of the partnership agreement, the plaintiff entered into and continued upon an active participation in the affairs and business of the said partnership until the year 1900.

Paragraph "Fifth" alleges that in the year 1900 the plaintiff, with the full consent and approval of his copartners, including the defendants, temporarily withdrew from active participation in the business and affairs of said firm, and such inactivity continued until the latter part of the year 1911, although, during all of such period, he had remained a partner in said firm, liable for all of its indebtedness, and contributing his portion of the expenses of running the offices of said firm, and that during such period, at the request of the other members of the firm, he executed waivers or releases of participation in cer-

tain new enterprises in which they, or some of them, sought to embark.

Paragraph "Sixth" alleges that in the latter part of 1911 the plaintiff communicated to the defendants his purpose to resume active participation and co-operation in the business of M. Guggenheim's Sons, and the defendants expressed a desire on their part that the plaintiff should so return to such an active participation and co-operation.

Paragraph "Seventh" alleges that thereafter, by agreement with the defendants, he became chairman of the board of directors of the International Steam Pump Company, whose policies were dictated by M. Guggenheim's Sons, and entered into the active management of said company, whereby he was prevented for the time being from acquiring a knowledge of the activities in other enterprises in which the firm of M. Guggenheim's Sons was interested, or was becoming interested.

Paragraph "Eighth" alleges that on January 4, 1912, the plaintiff, at the solicitation of the defendants, executed an agreement, a copy of which is annexed to the complaint as Exhibit B. Exhibit B consists of two parts; the first part being an agreement, signed by the five defendants, which in substance is as follows: It recites that the firm of M. Guggenheim's Sons is composed of the plaintiff, the defendants, and Benjamin Guggenheim (since deceased), and that the defendants (therein designated as the subscribers) are desirous of engaging in certain ventures now known as the "Andacella Prospect," the "Las Condes Prospect," the "Chuquicamata Prospect," and the "South American Exploration" to acquire certain mining properties and rights for their mutual benefit, and that the remaining members of said firm, to wit, Benjamin Guggenheim and William Guggenheim, although not participants in said ventures, are willing that the business thereof, and also the business of other ventures in which the subscribers, or some of them, might thereafter engage, might be conducted by and in the name of M. Guggenheim's Sons, so far as it might be useful so to do, and then provides that the defendants (therein designated as subscribers) mutually agree to undertake the aforesaid ventures, and carry on the operations for which they are formed, and that each of them will contribute an equal part of the capital required therefor, and the net profits, or the net losses, shall be equally shared by the subscribers, and they further agree to indemnify the said firm of M. Guggenheim's Sons and the nonparticipating members, the plaintiff and Benjamin Guggenheim, against any loss by reason of said ventures. The second part of Exhibit B is executed by Benjamin Guggenheim and William Guggenheim, who are therein designated as the subscribers. This recites that the subscribers, who are members of the firm of M. Guggenhem's Sons, are not participants and have no interest in the "Andacella Prospect," the "Las Condes Prospect," the "Chuquicamata Prospect," and the "South American Exploration" described in the former instrument, and that the subscribers are willing that the other members of said firm shall be permitted to use the firm name and organization of M. Guggenheim's Sons for the transaction of the business of said ventures, and that, therefore, in consideration of the premises:

"The subscribers hereto do hereby expressly waive any participation in the profits that may result from the operations of the aforesaid ventures, and hereby disclaim any responsibility for any losses that may accrue therefrom, and it is further hereby expressly agreed that the subscribers shall have no interest in, or claim upon, any other enterprises or ventures which the said members, or some of them, may undertake, unless the subscribers, upon invitation, shall, in writing, agree to become interested in such ventures or enterprises and to contribute and pay their proportion of the money needed for the same, and to assume their proportion of the liabilities incurred therein; but nevertheless the subscribers consent that the parties to the instrument hereinbefore referred to, who have undertaken the said ventures, and such members as may hereafter undertake other ventures or enterprises, shall use the firm name of M. Guggenheim's Sons and avail themselves of the organization and facilities afforded by the said firm, without any cost or expense to the members of said ventures, and without any liability to account to the subscribers for any profits, benefits, or advantages derived therefrom, or from the business of the said ventures."

### Paragraph "Ninth" alleges:

"That at the time of the execution of said agreement the defendants were, and for a long time prior thereto had been (without the knowledge of the plaintiff), engaged in an extensive survey, exploration, examination, and investigation of the enterprise therein designated as the 'Chuquicamata Prospect,' and at the time they solicited and obtained the execution of the said agreement by the plaintiff, and for a long time prior thereto, the defendants well knew that the said 'Chuquicamata Prospect' included and embraced properties of great value, which had been or could be acquired by the said firm of M. Guggenheim's Sons at a price and upon terms that would realize large profits for said firm."

### Paragraph "Tenth" alleges:

"That the said defendants wrongfully and willfully concealed from the plaintiff the fact that they had made extensive surveys, explorations, examinations, and investigations of the enterprise designated in said agreement as the 'Chuquicamata Prospect,' and wrongfully and willfully concealed from the plaintiff, whom they knew to be ignorant thereof, the real value of the said 'Chuquicamata Prospect,' and the said defendants wrongfully and willfully concealed from the plaintiff the great advantage which would inure to them, and the great disadvantage which would be suffered by him, by his surrender and release of his right as a member of the said firm of M. Guggenheim's Sons to participate in the acquisition, exploitation, and development of the said 'Chuquicamata Prospect,' all of which was in violation of their duty toward him as a partner."

### Paragraph "Eleventh" alleges:

"That the said agreement, bearing date January 4, 1912, aforesaid, was executed by the plaintiff without consideration and in ignorance of the matters set forth in paragraphs designated herein as 'Ninth' and 'Tenth,' and because of plaintiff's implicit confidence in the defendants as his brothers and as his partners, and by reason of his belief that they were dealing with him in a full realization of the obligations due and owing from them to him as partners, and relying upon them to treat fairly with him, and believing that they would request no action on his part which would, to their knowledge, bring to them a benefit which by right belonged to him."

### Paragraph "Twelfth" alleges:

"That the plaintiff would never have executed the said agreement, had he been informed by the defendants of the true condition and value of the 'Chuquicamata Prospect' and the terms upon which it had been or could be acquired, of which condition, value, and terms defendants were fully informed; but, on the contrary, the plaintiff would have insisted upon his right as a

member of said firm of M. Guggenheim's Sons to fully participate and co-operate in the acquisition, exploitation, and development of the same, and to his share in the profits arising therefrom."

Paragraph "Thirteenth" alleges that the defendants have secured to themselves securities, properties, and moneys of the value of $60,000,-000 from the "Chuquicamata Prospect," and have refused to pay the plaintiff his proper share thereof, to his damage in the sum of $10,-000,000.

[7] Assuming the allegations of the complaint as true, and considering the facts alleged therein as admitted for the purposes of this motion, the complaint, in my opinion, is not open to the criticisms which the defendants have urged against it. The foundation of the plaintiff's claim is the breach of the defendants' duty towards him as their partner. The object of the action is not to set aside or cancel the settlement of the partnership accounts, which the complaint alleges took place between the plaintiff and the defendants; nor is it to set aside and cancel the agreement annexed to the complaint and marked Schedule B. What the plaintiff does seek to accomplish by the action is to compel the defendants to share with him the profits and benefits which he alleges they have acquired to their own advantage by reason of their failure to acquaint him fully and fairly as their partner with the conditions and circumstances surrounding the venture designated in the complaint as the "Chuquicamata Prospect," and from which advantages and benefits he alleges that they had excluded him, by inducing him to execute the agreement, Schedule B, unwittingly, and in the absence of a full disclosure on their part. In other words, the basis of the action is their fraudulent concealment from him of knowledge which they had acquired in the partnership business concerning that property, and which fraudulent concealment induced him to forfeit his rights as a participant in that portion of the copartnership business.

[8] The defendants, in their brief, have discussed and referred to many decisions in our courts in actions between partners; but I have been unable to find among them any case which sustains their position that, under the circumstances disclosed by the complaint in this action, the plaintiff has failed to state facts sufficient to constitute a cause of action. On the contrary, the underlying principle upon which this action rests has many times been asserted, both in the decisions of our courts and in the pages of text-writers, and is too firmly fixed in our jurisprudence to admit of question at this time. The principle to which I refer is that of uberrima fides, the corner stone without which it is impossible to rear the structure of any copartnership. This is not alone a principle of ethics; it is a rule of positive law.

The comprehensive briefs submitted by the learned counsel in this case manifest their appreciation of the serious consequences to their respective clients of the issues now under consideration, and offer a temptation, difficult to resist, to expand this memorandum unduly. I shall, however, only refer to a few authorities in support of the conclusion which I have reached. The question has been considered by the Supreme Court of the United States in Brooks v. Martin, 2 Wall.

70, 17 L. Ed. 732. In this case Mr. Justice Miller, in delivering the opinion of the court, said:

"Brooks and Field thus managed the entire concern, at a distance of near 2,000 miles from Martin, and, as we think the testimony shows, without consulting him in any way, and with very little regard for his large interest in the business. Under these circumstances, Brooks must be held to have been not only the partner, but the special agent, of Martin, and the purchase made by him of Martin's interest must be tested by the rules which govern such transactions as between principal and agent. What are these rules? 'On the whole, the doctrine may be generally stated that wherever confidence is reposed, and one party has it in his power, in a secret manner, for his own advantage, to sacrifice those interests which he is bound to protect, he will not be permitted to hold any such advantage.' Or, to speak more specifically, 'if a partner who exclusively superintends the business and accounts of the concern, by concealment of the true state of the accounts and business, purchase the share of the other partner for an inadequate price, by means of such concealment, the purchase will be held void.' Speaking of a purchase by a trustee from his cestui que trust, Lord Chancellor Eldon says, in the case of Coles v. Treoothick, that, though permitted, it is a transaction of great delicacy, and which the court will watch with the utmost diligence; so much, that it is very hazardous for a trustee to engage in such a transaction. 'A trustee may buy from the cestui que trust, provided there is a distinct and clear contract, ascertained to be such after a jealous and scrupulous examination of the circumstances: Provided the cestui que trust intended the trustee should buy, and there is no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee. I admit,' he says, 'it is a difficult case to make out, wherever it is contended that the exception prevails.' This has long been regarded as a leading case, and the above remarks have been often cited by other courts with approbation. We think them fully applicable to a purchase, by an agent from his principal, of the property committed to his agency. We lay down, then, as applicable to the case before us, and to all others of like character, that in order to sustain such a sale it must be made to appear, first, that the price paid approximates reasonably near to a fair and adequate consideration for the thing purchased; and, second, that all the information in possession of the purchaser, which was necessary to enable the seller to form a sound judgment of the value of what he sold, should have been communicated by the former to the latter."

In Butler v. Prentiss, 158 N. Y. 49, 52 N. E. 652, Vann, J., in writing for a unanimous court, reviews the authorities and ably and clearly states the law in the following words:

"As was said in Mitchell v. Reed, 61 N. Y. 123, 126 [19 Am. Rep. 252]: 'The relation of partners with each other is one of trust and confidence. Each is the general agent of the firm, and is bound to act in entire good faith to the other. The functions, rights, and duties of partners in a great measure comprehend those both of trustees and agents, and the general rules of law applicable to such characters are applicable to them.' In Maddeford v. Austwick, 1 Sim. 89, affirmed in 2 Myl. & K. 279, the court said: 'The defendant, being the partner whose business it was to keep the accounts of the concern, could not, in fairness, deal with the plaintiff for his share of the profits of the concern, without putting him into possession of all the information which he himself had with respect to the state of the accounts between them. The defendant knew, from the account in his possession, that the £1,000 was not an adequate consideration for the plaintiff's share of profits, and he cannot be permitted, in a court of equity, to maintain advantage which he has gained over the plaintiff's ignorance. * * * The supposed account of the profits of the concern, up to the end of 1817, necessarily formed the basis of the plaintiff's calculation of profits for the ensuing three years, and, being misled in that respect, he is entitled to avoid the whole agreement, and to have an account of the profits of the concern up to the dissolution in 1821. The

defendant's argument of confirmation of the agreement by the subsequent conduct of the plaintiff, fails altogether, it not being pretended that, at the time of such acts on the part of the plaintiff, he was aware of the advantage which the defendant had gained over him.' A learned author speaking upon this subject has recently said: 'The partners owe to each other the most scrupulous good faith. Each one has a right to know all that the others know, and their connection is one of great confidence; and the uberrima fides of a fiduciary relation will be the standard of fidelity exacted from them. * * * There is no principle of law that prevents one partner buying out the interest of the other, or selling to him in good faith, provided he acquires no secret benefit for himself, at the expense of his copartner, by suppressing information or concealing facts which the latter was entitled to know. * * * But deception of any kind or the nondisclosure of material facts, especially by a managing partner, will vitiate the sale.' Bates on the Law of Partnership, §§ 303, 309. So Judge Story, in his valuable work on Partnership (section 172), says: 'Good faith not only requires that every partner should not make any false representation to his partners, but also that he should abstain from all concealments which may be injurious to the partnership business. If, therefore, any partner is guilty of any such concealment and derives a private benefit therefrom, he will be compelled in equity to account therefor to the partnership. Upon the like ground, where one partner, who exclusively superintended the accounts of the concern, had agreed to purchase the share of his copartners in the business for a sum which he knew, from the accounts in his possession, but which he concealed from them, to be for an inadequate consideration, the bargain was set aside in equity as a constructive fraud; for he could not in fairness deal with the other partners for their share of the profits of the concern without putting them in possession of all the information which he himself had with respect to the state of the accounts and the value of the concern.' See, also, Kimberly v. Arms, 129 U. S. 512 [9 Sup. Ct. 355, 32 L. Ed. 764]; Lindley on Partnership, 303; Parsons on Partnership, 192. But, in addition to the business relations of the parties, their personal relations were intimate and confidential, and the plaintiff trusted the defendant as an old friend, superior to himself in business experience and ability. Moreover, the defendant, who knew all about the books and business, encouraged the plaintiff, who knew little about either, to act under a mistake as to a fact of great importance, caused by a misrepresentation made in his presence, not only undenied by him, but made the basis of an argument to persuade the plaintiff to enter into the contract. In Hammond v. Pennock, 61 N. Y. 145, 152, this court said: 'The case has thus far been considered as though the fraud requisite as a basis for rescinding a contract in equity is the same in nature as that demanded in a court of law in an action for damages for deceit. In equity, the right to relief is derived from the suppression or misrepresentation of a material fact, though there be no intent to defraud. * * * This doctrine is substantially grounded in fraud, since the misrepresentation operates as a surprise and imposition upon the opposite party to the contract. It is inequitable and unconscientious for a party to insist on holding the benefit of a contract which he has obtained through misrepresentations, however innocently made' [citing Peck v. Gurney, L. R. 13 Eq. 79, 113; Wilcox v. Iowa University, 32 Iowa, 367; Smith v. Reese River Co., L. R. 2 Eq. 264; Kennedy v. Panama Co., L. R. 2 Q. B. 580; 1 Story on Eq. Jur. § 193, and cases cited; Perry on Trusts, § 171]. In Brooks v. Martin, 2 Wall. 70, 72 [17 L. Ed. 732], the Supreme Court of the United States said that 'if the parties are to be regarded in this transaction as holding towards each other no different relations from those which ordinarily attend buyer and seller, and as, therefore, under no special obligation to deal conscientiously with each other, we are satisfied that no such fraud is proven as would justify a court in setting aside an executed contract. But there are relations of trust and confidence which one man may occupy towards another, either personally or in regard to the particular property which is the subject of the contract, which impose on him a special and peculiar obligation to deal with the other person towards whom he stands so related, with a candor, a fairness, and a refusal to avail himself of any advantage of superior information, or other favorable circumstances, not re-

quired by courts of justice in the usual business transactions of life.' The conclusion of the learned referee, that the plaintiff assented to the agreement in reliance upon previous misrepresentations made by the manager 'and the defendant,' was clearly right; but we think that he did not give to that conclusion the full force required by law, as he granted the plaintiff relief only as to a part of the arrangement. He appears to have proceeded on the theory that the defendant was guilty of constructive fraud as distinguished from moral fraud. Constructive fraud, however, sometimes called legal fraud, is, nevertheless, fraud, although it rests more upon presumption and less upon furtive intent than moral fraud. Cowee v. Cornell, 75 N. Y. 91, 99 [31 Am. Rep. 428]. Where fiduciary relations exist, and a condition of superiority is held by one of the parties over the other, 'in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption.' Pomeroy's Eq. Jur. § 956. As was said in Tate v. Williamson, L. R. 2 Ch. App. 55, 60: 'Wherever two persons stand in such a relation, that while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed.' "

And these principles have been recently restated and reaffirmed in Selwyn & Co. v. Waller, 212 N. Y. 507, 106 N. E. 321, L. R. A. 1915B, 160, where Miller, J., writing, says:

"It may be admitted that the question lies on the boundary between the domain of law and that of ethics. A majority of the Appellate Division were of the opinion that no duty rested on Waller to disclose his interest, because it made no difference to Shubert to whom the royalties were paid. That position overlooks the fact that, in assuming two-thirds of Waller's obligation to Frohman, Shubert was interested in knowing precisely what that obligation was, and it takes a too narrow view of the duties of parties about to engage in a joint adventure, whether as partners inter sese or not. It is now well settled that persons in, or about to assume, that relation owe to each other the utmost good faith and the most scrupulous honesty. Getty v. Devlin, 54 N. Y. 403; Mitchell v. Reed, 61 N. Y. 123 [19 Am. Rep. 252]; Kimberly v. Arms, 129 U. S. 512 [9 Sup. Ct. 355, 32 L. Ed. 764]. They do not deal at arms' length. The very fact that one conceals his true interest from the other indicates a purpose to gain some advantage at the other's expense or a belief that disclosure would influence the other in deciding whether and upon what terms to embark on the enterprise. Good faith requires that neither shall make a secret profit out of the undertaking. The rule against secret profits is not limited in its application to cases of agency, trusteeship, and the like strictly fiduciary relations. Its application to a case like this depends on the reciprocal good faith required of joint adventurers, and more precisely upon the mutual burdens and benefits which the relation necessarily implies are to be shared in the stipulated proportions. If Waller had acquired his interest in the authors' royalties after making the contract with the appellant, he would plainly have been bound to give the joint undertaking the benefit of it. That the concealment of his interest at the time of making the contract puts him in the same case is settled in this state by authority. Getty v. Devlin, supra. It begs the question to say that it was immaterial to the appellant to whom the royalties were paid. If the duty of disclosure existed, the law will not impose upon the party wronged the often impossible task of establishing pecuniary damage or that he would not have embarked on the undertaking if disclosure had been made. The case is precisely the same in principle as though Waller had owned the entire interest in the authors' royalties, and, concealing the fact, had induced his coadventurer to purchase it outright from the apparent owners at a large advance over the cost to him,

the familiar case of promoter's secret profits. Indeed, in some aspects, Waller's position is worse than that of the typical dishonest promoter, who takes his illicit profit at the inception of the enterprise. Waller had secretly arranged to receive a percentage, not of the profits, but of the gross receipts of the business, so long as it continued, although he had stipulated to share profits and losses in stated proportions. It is unnecessary accurately to measure the extent, or precisely to determine the nature, of the injury which was, or might thus have been, done to Shubert. That injury might have resulted is obvious. It is sufficient to determine that Waller was guilty of the breach of a legal duty, of the failure to conform to the high standard of honesty and good faith which the law exacts of one partner or coadventurer towards the others. In our opinion that standard should not be lowered, by putting dubious conduct outside of the domain of law, especially as exact justice can always be done by making the wrongdoer a trustee of his secret interest for himself and his associates."

The motion is denied, with costs.